JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



10 CV 392

| | |
|---|---|
| WEIGHT WATCHERS INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JENNY CRAIG, INC.<br><br>Defendant. | Civil Action No._____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |



Plaintiff Weight Watchers International, Inc. ("WWI"), by its attorneys Paul,
Weiss, Rifkind, Wharton & Garrison LLP, for its complaint against defendant Jenny Craig, Inc.
("Jenny Craig"), alleges as follows:

### Nature of the Action

1.     WWI brings this action for injunctive relief and damages to halt a false
and deceptive advertising campaign by its competitor, Jenny Craig.

2.     ˙ Founded in 1963 and well known throughout the world, WWI is the
world's leading provider of weight-management services and products, operating globally
through a network of company-owned and franchised operations.  WWI is best known for
organizing and conducting Weight Watchers Classes — weekly meetings for individuals
seeking to lose weight and to maintain that weight loss.  WWI also provides other offerings to
enable consumers who do not choose to or are unable to attend Classes to follow the Weight
Watchers weight-loss program.

3.     The beginning of the calendar year is a critical time for weight-loss
companies, as consumers seek to make good on their New Year's resolutions to lose weight by
enrolling in commercial weight-loss programs.  Seeking to capitalize on this crucial consumer
dieting season, Jenny Craig, in a newly launched nationwide advertising campaign across all

media — television, print, and Internet — falsely claims that scientific studies show that its weight-loss program is superior to the Weight Watchers weight-loss program.

4.      The centerpiece of Jenny Craig's campaign is a false television commercial featuring Jenny Craig spokesperson Valerie Bertinelli in a laboratory setting declaring that she has "big news." Clad in a lab coat and surrounded by "scientists," Bertinelli announces that "a major clinical trial" shows that "Jenny Craig clients lost, on average, over twice as much weight as those on the largest weight loss program!" Jenny Craig lodges a similar claim in its print advertising, proclaiming: "In independent clinical trials, Jenny Craig clients, on average, lost over twice as much weight as those on the largest weight loss program." And on Jenny Craig's website, Jenny Craig declares in the masthead of its home page, "BIG NEWS!  Jenny Craig clients **LOST OVER TWICE AS MUCH WEIGHT** as those on the largest weight loss program!" Similar claims pervade Jenny Craig's banner advertisements on the Internet that re-direct users to Jenny Craig's website. These statements unambiguously tell consumers that Jenny Craig is superior to the largest weight-loss program — indisputably, the Weight Watchers weight-loss program — on the most important criteria to weight-loss consumers: the amount of weight lost. Jenny Craig's campaign enforces its false message through visual representations — such as bar graphs — that purport to depict the head-to-head efficacy of all current weight-loss offerings of WWI and Jenny Craig.

5.      The Jenny Craig advertisements are false. Jenny Craig did not conduct "a major clinical trial" comparing its product with the Weight Watchers program. The trials cited by Jenny Craig (available on its website) are, in fact, two separate studies, conducted ten years apart for entirely different purposes than comparing the efficacy of the Jenny Craig and Weight Watchers weight-loss programs. One study compares the success of individuals following

2

WWI's weight-loss program in 1998 to January 2001 by attending Weight Watchers Classes to weight loss of self-help dieters trying to lose weight without the help of any commercially available weight-loss program (the "WWI Study"). The other study compares the success of consumers of Jenny Craig's current weight-loss program with the weight loss of self-help dieters (the "Jenny Craig Study").

6.    The Jenny Craig "trials" do not relate to WWI's current offerings. The tested version of WWI's program that is the subject of the 10-year-old WWI Study does not reflect the significant and material programmatic and technological innovations WWI has made to the Weight Watchers program in the intervening years — including multiple revisions of and additions to the Weight Watchers food plan, and the introduction of Weight Watchers eTools ("eTools"), a set of electronic tools (none of which existed ten years ago) that are now included in the Monthly Pass subscription plan to Classes purchased by over 60 percent of those attending company-operated Weight Watchers Classes ("Members").

7.    Moreover, although Jenny Craig's claim purports to pertain to the efficacy of the Weight Watchers program generally, the WWI Study tested only individuals following the Weight Watchers program through Weight Watchers Classes as they existed a decade ago, and not through other means. Today, WWI offers several ways to follow the Weight Watchers program, including attendance at Weight Watchers Classes alone; attendance at Classes combined with a subscription to eTools; and Weight Watchers Online ("Online"), a stand-alone, electronic product offered through subscriptions on the Weight Watchers Website.

8.    Thus, the WWI Study and Jenny Craig Study are irrelevant to, and cannot support, Jenny Craig's claims that its clients "lost over twice as much weight" as those using the Weight Watchers weight-loss program.

9. Furthermore, the studies also do not support Jenny Craig's claims because they are not scientifically reliable for that purpose under the generally accepted standards of biomedical research applicable here. To support a comparative efficacy claim, the scientific evidence required is a head-to-head randomized controlled trial of the two current products that are the subject of the claim. Contrary to this accepted scientific protocol, neither of the two studies on which Jenny Craig relies compared WWI to Jenny Craig. (Nor does any other study provide a head-to-head randomized controlled trial of the WWI and Jenny Craig weight-loss programs.) Jenny Craig's reliance on the studies as support suffers from additional flaws, including that the studies had different research purposes and used different protocols, thus making any cross-trial comparison invalid and unreliable. In short, because the studies cannot and do not support Jenny Craig's comparative efficacy claims, those claims are literally false.

10. So, too, are Jenny Craig's statements that "we're talking about a major clinical trial here, run by some serious lab geeks" and "Jenny's delicious cuisine and the support of your personal consultant make all the difference," and the many visual representations included in its advertisements, such as bar graphs quantifiably illustrating the supposed results of the "trial." These statements and visual representations wrongly tell consumers that (a) a head-to-head study (or studies) of the Jenny Craig and Weight Watchers offerings was conducted when no such study took place; (b) such study compared the current Jenny Craig offerings and the current Weight Watchers offerings when the Weight Watchers offering tested is a decade old; (c) Jenny Craig's superiority claim is with respect to all of WWI's weight-loss offerings when only a segment — Weight Watchers Classes — was tested; and (d) Jenny Craig's cuisine and personal consultants caused its superior results when no such comparison between the two weight-loss programs was conducted and no such finding was even remotely made.

4

11.    Accordingly, Jenny Craig's conduct constitutes false advertising in clear violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state law.

12.    Moreover, Jenny Craig's deceptive campaign — founded on a false comparative claim naming a competitor — is presumed to cause WWI irreparable harm and, in fact, is causing WWI irreparable harm. Among other harms, Jenny Craig's campaign is plainly designed to steal customers from WWI during the winter diet season, the roughly two-and-a-half month period from around New Year's Day through mid-March when the bulk of consumers joining a weight-loss program enroll. Jenny Craig's false advertising also threatens to tarnish irreparably WWI's brand, goodwill, and reputation as the unrivaled leader of the commercial weight-loss industry based on its excellent services, products, and integrity. Thus, Jenny Craig's deceptive campaign — literally false and causing WWI immediate and irreparable harm — should be enjoined before it further deceives the consuming public and further harms WWI.

### The Parties

13.    Plaintiff WWI is a corporation duly organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 11 Madison Avenue, New York, New York 10010.

14.    Upon information and belief, defendant Jenny Craig is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 5770 Fleet Street, Carlsbad, California 92008. Since 2006, Jenny Craig has been a wholly owned subsidiary of Nestlé, S.A.

15.    Jenny Craig is engaged in the marketing, distribution, advertising, and sale in interstate commerce of weight-management products and services, which are sold throughout the United States and within this District.

## Jurisdiction and Venue

16.    This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the statutory and common laws of the State of New York.  This Court's jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  The amount in controversy exceeds $75,000.  This Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

17.    This Court has personal jurisdiction over Jenny Craig pursuant to N.Y. Civ. Prac. L. & R. ("CPLR") § 302(a), because Jenny Craig has (i) transacted business within the state (CPLR § 302(a)(l)); (ii) committed a tortious act within the state (CPLR § 302(a)(2)); and/or (iii) committed a tortious act without the state causing injury to person or property within the state, expects or should reasonably expect the act to have consequences in the state, and derives substantial revenue from interstate commerce (CPLR § 302(a)(3)(ii)).  Upon information and belief, Jenny Craig and its agents prepared, disseminated, made available or broadcast the Jenny Craig television commercial, print and Internet advertisements, and related promotional materials at issue here, in this District and throughout the United States.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Jenny Craig resides in this District (as that term is defined in 28 U.S.C. § 1391(c)) and/or pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur in this District.

## Factual Background

### WWI and the Weight Watchers Weight-Loss Program

19.    WWI is the leading provider of commercial weight-loss products and services in the United States.  Upon information and belief, in 2008, WWI had the highest

revenue of all U.S. commercial weight-loss programs, with revenue more than twice that of its closest competitor.

20.    WWI is well known for its success in helping individuals to change their behavior so as to lose weight safely and to maintain that weight loss. In its nearly 50 years of operations, WWI has developed extremely strong brand awareness and credibility among the consuming public based on its superior services and products. This renowned reputation for excellence is an essential aspect of WWI's continuing ability to maintain and grow its existing businesses.

21.    Since its inception, WWI and its franchisees have offered Weight Watchers Classes for those who wish to lose and maintain weight. Weight Watchers Classes are led by a trained lecturer who presents to Weight Watchers Members the Weight Watchers weight-loss program, which includes a proprietary food plan and other techniques for weight loss and maintenance developed by WWI and based on sound scientific principles encompassing nutrition, exercise, and behavior modification. In 2008 alone, each week approximately 1.4 million Members around the world attended over 50,000 Weight Watchers Classes run by more than 16,000 trained lecturers.

22.    As an alternative to following the Weight Watchers weight-loss program through attendance at Weight Watchers Classes alone, WWI's Members may sign up for "Monthly Pass," which provides them access to Weight Watchers Classes and eTools. eTools, launched in 2001 and available on the Weight Watchers website and through smartphones such as the iPhone, contains robust functionality and content for Members to manage the daily aspects of their Weight Watchers weight-management efforts, stay informed and motivated about their efforts, and keep track of their efforts. eTools and the many other innovations in WWI's

7

offerings, particularly through new technology, are an important means of facilitating adherence to the Weight Watchers weight-loss program. Currently, approximately 60 percent of WWI's Members attending company-operated Weight Watchers Classes subscribe to Monthly Pass and thereby have access to eTools.

23.    Over the years, WWI has used and continues to use methods beyond its Class business to provide weight-loss advice and products to consumers. To that end, in order to accommodate different lifestyles and preferences, WWI offers several products to consumers who are unable to or do not desire to attend Weight Watchers Classes, including Weight Watchers Online, available since 2001, and Weight Watchers At Home, a kit for home use containing written materials similar to the materials provided in Classes. Weight Watchers At Home has been available since 1999.

24.    WWI's weight-loss approach is based on behavior modification and healthy food selection. WWI does not require individuals to eat only Weight Watchers branded foods; rather, followers can eat whatever they wish. WWI routinely updates its food plan, behavior modification approaches, and supporting materials to reflect the most current, proven scientific data and research and in order to bring consumers increasingly effective weight-loss programs. WWI also gains important insights from studying its past programs, including customer feedback, and modifies its weight-loss program based on these analyses. Over the past decade, WWI has changed or added new elements to its weight-loss program in order to keep pace with advancements in science and society.

25.    WWI's current weight-loss program, the Momentum program, was introduced at the end of 2008. The Momentum program incorporates WWI's proprietary ***POINTS*** weight-loss system. Food items are assigned a particular ***POINTS*** value by WWI,

calculated based on WWI's patented *POINTS* formula. A consumer following the Momentum program is assigned a personal *POINTS* "budget" based upon the individual's current body weight, height gender, age, and occupation. Subject to certain nutritional guidelines, people following the plan may eat any type of food item they desire as long as the total *POINTS* value of the food they consume each day does not exceed their *POINTS* budget.

26.    The Momentum program introduced the concept of "Filling Foods" to the Weight Watchers program. This "Filling Foods" innovation, based on ever-expanding scientific knowledge about the various nutritional and chemical properties of food, steers followers toward consuming foods that are more nutritious and satisfying (*i.e.*, filling) than others. Although people following the Weight Watchers program may still eat whatever they want as long as they stay within their *POINTS* budget, the Momentum program encourages participants to eat foods from a new "Filling Foods" list, a list of foods that are low in calories but help keep people fuller longer, in order to increase satiety, making it easier for participants to stay on the program. The "Filling Foods" concept also opens the Weight Watchers weight-loss program up to consumers who do not wish to track *POINTS*. These individuals can choose the "Simply Filling" technique and track only those foods not found on the "Filling Foods" list for their weekly *POINTS* allowance.

27.    The Momentum program also introduced the idea of **Set*POINTS***, which provides more freedom in estimating portion sizes for foods on the **Set*POINTS*** list and more flexibility when eating outside the home. While *POINTS* values for these foods must still be counted, participants can eat what they deem to be a reasonable portion of that food at any one meal, keeping in mind their hunger cues, without worrying about exact weighing or measuring, and count only the **Set*POINTS*** value of that food. These innovations are designed to increase

9

the effectiveness of the Weight Watchers weight-loss program and the ability of participants to adhere to the plan long-term.

28.    The Momentum program also includes an activity plan, which encourages exercise by allowing participants to earn additional *POINTS* to add to their daily budget through physical activity, and a behavior modification plan based on current understandings regarding healthy habits of those who successfully lose weight and maintain their weight loss.

29.    The Momentum program is materially different in a number of ways from WWI's weight-loss program in place between 1998 and 2001, 1-2-3 Success, the subject of the WWI Study.  Indeed, the Momentum program is WWI's fourth-generation food plan since the time of the WWI Study.  In addition to the innovations described above, the Momentum program includes a revised *POINTS* system that establishes a daily *POINTS* target based on an individual's gender, age, height, and occupation, in addition to weight; includes a weekly *POINTS* allowance that can be used at one's discretion; and caps the amount of fiber in the *POINTS* formula.  WWI has also made changes to its meeting environment to improve its reward and motivational techniques and has enhanced its program and service delivery by providing *POINTS* values for significantly more foods, including home-cooked recipes, retail food, and restaurant meals.

30.    Moreover, since 1-2-3 Success, WWI has introduced a number of additional resources, now incorporated in the Momentum program as well as intervening program generations, to further support and improve participants' adherence to the Weight Watchers weight-loss program.  WWI has also improved on a number of resources previously available.

31.    WWI has worked hard to incorporate and adapt society's dramatic behavioral, technological and scientific changes in these past ten years to its weight-loss program.  As noted above, WWI launched eTools for its Members in 2001.  And the Weight Watchers website — unlike its incarnation a decade ago — now contains many robust features to aid the efforts of individuals following the Weight Watchers weight-loss program, including significant content and fuctionality not available from 1998 to 2001, such as more articles, videos, blogs, and a section dedicated to scientific developments in nutrition and obesity.  In addition, WWI now offers mobile applications (including an "iPhone App") that allow participants to access information and tools through their smartphones, thereby improving program usability and convenience.  This past summer, WWI launched new social networking tools to which all participants have full access.

### Jenny Craig's False and Deceptive Advertising Campaign

32.    According to Jenny Craig's website (www.jennycraig.com), Jenny Craig offers two main options for clients to follow the Jenny Craig weight-loss program:  Jenny Craig In-Centre and Jenny Craig At Home (also known as Jenny Direct).  Jenny's Cuisine®, Jenny Craig's own line of food products, is an essential part of the Jenny Craig weight-loss program.  Jenny Craig clients eat three meals and one snack of Jenny's Cuisine®, supplemented with limited, additional foods such as fresh fruits and vegetables.  Jenny Craig clients enrolled in the In-Centre program visit their local Jenny Craig Centre weekly for a personalized "one-on-one" consultation and to pick up their Jenny's Cuisine® for the week ahead.  Jenny Craig At Home clients have Jenny's Cuisine® and program materials delivered to their homes and are offered weekly telephone consultations.

33.    Jenny Craig also maintains a website that promotes and markets its products at www.jennycraig.com.  The website offers Jenny Craig clients additional tools, also

referred to as "eTools," to support their weight loss, including, but not limited to, articles and tips, a progress tracker, journal, activity planner, recipes, a menu planner, success stories, and an online community with a message board and chat room.

34.    Jenny Craig launched its false and deceptive advertising campaign on or about December 28, 2009, upon information and belief, to coincide with the commencement of the winter diet season, the most critical time for advertising and promotion in the weight-loss industry.  Every stop on Jenny Craig's deceptive campaign features the same claim: "Jenny Craig clients LOST OVER TWICE AS MUCH WEIGHT as those on the largest weight loss program!" — an unmistakable reference to the Weight Watchers program (indeed, the study cited as support for Jenny Craig's claim and clearly placed on the Jenny Craig website expressly names WWI) — and claims that Jenny Craig's superiority is supported by "independent clinical trials" or "a major clinical trial."

### Jenny Craig's False and Deceptive Television Commercial

35.    Since its launch, the television commercial that is part of Jenny Craig's false and deceptive advertising campaign has been broadcast nationwide, including, upon information and belief, on the A&E, Biography, Dish, E!, Hallmark, Hallmark Movie, Lifetime Movie, Lifetime Real Women, Oxygen, Sleuth, Style, TV One, and WE networks.  Jenny Craig also makes the commercial accessible to consumers who visit its website.  A story board for the television commercial is attached as Exhibit A and incorporated herein by reference.  A DVD containing a true and correct copy of the television commercial is attached as Exhibit B and incorporated herein by reference.

36.    The television commercial begins with the company's spokesperson, Bertinelli, rising from a seat at a table in a set designed to look like a laboratory, with actors

12

posing as "scientists" at work in the background. Bertinelli, wearing a lab coat, declares that "Jenny Craig has BIG news." She continues: "In independent clinical trials, Jenny Craig clients lost, on average, over twice as much weight as those on the largest weight loss program." As Bertinelli makes this statement a box containing blue text appears to her right, visually supporting her statement, claiming: "Jenny Craig clients, on average, lost over *twice* as much weight as those on the largest weight loss program.*" (emphasis in original). As Bertinelli says "twice" she holds up two fingers to emphasize this word and a line is drawn under the word "twice" in the text on the screen. An asterisk at the end of the text is linked to small, unnoticeable text at the bottom of the screen noting: "Comparing results at 12 months of separate clinical studies with the same protocol design." This note is white with only a slight grey outline and appears on screen for only six seconds of the thirty-three second advertisement, ensuring that it completely blends in to the white background and goes entirely unnoticed by the consumer.

       37.    Bertinelli goes on to exclaim "Over twice as much weight!" while the screen shows a close-up of her hand gesturing to two beakers containing a light blue gel substance showing the amount of weight each company's clients lost, on a comparative basis. The beaker labeled "Jenny Craig clients lost this much" contains more than twice the blue gel substance as the beaker labeled "Their clients lost this much." Bertinelli then states: "Jenny's delicious cuisine and the support of your personal consultant make all the difference." She continues: "And we're talking about *a major clinical trial* here, run by some serious lab geeks," as she gestures to one of the actors in the background (emphasis added). Bertinelli then takes off her lab coat and declares: "I love science."

**Jenny Craig's False and Deceptive Print Advertisements**

38.     Jenny Craig has placed advertisements containing the same false and deceptive message in major print media, including the *New York Times*, *USA Today* and *Cooking Light* magazine.   True and correct copies of these print advertisements are attached as Exhibits C-E and incorporated herein by reference.   These advertisements claim that "In independent clinical trials, Jenny Craig clients, on average, lost over twice as much weight as those on the largest weight loss program!"   They also contain a bar chart with a yellow bar labeled "Their clients lost this much" and a blue bar, more than twice as tall as the yellow bar, labeled "Jenny Craig clients lost this much."

**Jenny Craig's False and Deceptive Website and Internet Advertisements**

39.     The same false "twice as much weight" message pervades Jenny Craig's website.   True and correct copies of the relevant pages of Jenny Craig's website are attached as Exhibits F-G and incorporated herein by reference.

40.     On the Jenny Craig home page, Jenny Craig claims:  "BIG NEWS!  Jenny Craig clients **LOST OVER TWICE AS MUCH WEIGHT** as those on the largest weight loss program!" (emphasis in original).   The site, through a button, invites consumers to "FIND OUT HOW."   Below the claim is the same bar chart used in the print campaign, comparing weight loss on Jenny Craig with weight loss on the Weight Watchers program.   Under the bar chart is a purple button inviting customers to "See for Yourself."

41.     Clicking on either the "Find Out How" button or "See For Yourself" button takes consumers to the Jenny Craig "Lose Weight" page, where half the page is dedicated to the "twice as much weight" campaign.  Below the Jenny Craig headings and tool bar the claim that "Jenny Craig clients **lost over TWICE as much weight!**" appears in large purple font

(emphasis in original). Below this statement, on the left, is the claim: "In independent clinical trials, Jenny Craig clients, on average, lost over twice as much weight as those on the largest weight loss program.*" The television commercial described above plays beneath that text. To the right, the bar chart, comparing weight loss between Jenny Craig and Weight Watchers clients, appears once again, along with the question: "How much weight do *you* want to lose?" Jenny Craig notes in barely noticeable font that it is "[c]omparing results at 12 months of separate clinical studies with the same protocol design."

42.    At the bottom of the "Lose Weight" page, on the right hand side, is a box labeled "Get the Facts." Once again, this section claims that "Jenny Craig clients lost over TWICE as much weight!" and exhorts consumers to: "See for yourself." The box contains links to a summary of the Jenny Craig Study ("Read the Summary"), some details of the Jenny Craig Study ("Get the Details"), and the ten-year old WWI Study ("Compare their Results"). The inclusion of the WWI Study on the Jenny Craig website, as the purported basis for the claim, erases any doubt that the "largest weight loss program" referenced in the comparative ads is the Weight Watchers program.

43.    Jenny Craig also employs banner advertisements on various websites with the message: "Jenny Craig clients **lost over TWICE as much weight!**" (emphasis in original). The banner ads contain a button inviting consumers to "FIND OUT HOW," which when clicked, upon information and belief, directs consumers to the Jenny Craig home page. True and correct copies of the banner ads used by Jenny Craig are attached as Exhibit H and incorporated herein by reference.

### Jenny Craig's Claims of Superiority Are Literally False

44.    The WWI Study and the Jenny Craig Study — the sole studies mustered by Jenny Craig as support of their superiority claims — are nothing of the sort. Neither is, as it

must be under the relevant scientific standard, a head-to-head randomized controlled trial comparing the weight-loss programs to each other. Rather the studies that form the basis for Jenny Craig's faulty comparison are separate studies — conducted ten years apart for expressly different purposes.

45.      The WWI Study, which was conducted between January 1998 and January 2001 and published in the Journal of the American Medical Association on April 9, 2003, was a "randomized, parallel-group 2-year trial" designed "[t]o compare weight loss and health benefits achieved and maintained through self-help weight loss vs with a structured commercial program." A true and correct copy of the WWI Study taken from Jenny Craig's website is attached as Exhibit I and incorporated herein by reference. Participants assigned to the structured commercial program group followed the then-current version of the Weight Watchers weight-loss program, 1-2-3 Success. The current Weight Watchers weight-loss program, the Momentum program, is four generations removed from the program evaluated in the WWI Study, 1-2-3 Success. Neither Jenny Craig's weight-loss program nor any other commercial weight-loss program were tested in this clinical trial. The WWI Study also did not test those following the Weight Watchers program through any means other than Weight Watchers Classes alone, including the combination of Weight Watchers Classes and an eTools subscription, or Weight Watchers Online (neither of which was available at the time of the study), or Weight Watchers At Home.

46.      The Jenny Craig Study, which upon information and belief is still ongoing, was designed "[t]o test, in a randomized controlled trial, whether participation in the Jenny Craig Centre-based program and/or the Jenny Direct program is associated with greater weight loss at six, 12, and 18 months and whether weight loss is maintained over a 24-month

period compared to usual care [self-help] conditions" and "to describe the effect of participation in the weight loss programs (versus control conditions) on biochemical factors... and cardiopulmonary fitness." A true and correct copy of a chart describing the Jenny Craig Study taken from Jenny Craig's website is attached as Exhibit J and incorporated herein by reference. A true and correct copy of a summary of the Jenny Craig Study taken from Jenny Craig's website is attached as Exhibit K and incorporated herein by reference. Details of the clinical trial, based on one year data for 92 percent of trial participants, have been made available on Jenny Craig's website, but, upon information and belief, the clinical trial has not yet been formally published. Neither WWI's weight-loss program nor any other commercial weight-loss program were tested in the Jenny Craig Study. (Jenny Craig performed a similar study in 2007 — a smaller study examining only Jenny Craig In-Centre that reports less weight loss than reported in the interim results of the current study. Jenny Craig does not rely on the 2007 study as support for its claim.)

47.    These studies are irrelevant to Jenny Craig's claims that its clients "lost over twice as much weight" as those using the Weight Watchers weight-loss program. First, although Jenny Craig's advertisements compare Jenny Craig's current weight loss offering and WWI's current weight loss offering, the WWI Study provided as support relates to a Weight Watchers weight-loss program from ten years ago. As described above, since that time, the Weight Watchers weight-loss program has changed in a number of material respects. The Weight Watchers food plan, now on its fourth-generation since the time of the WWI Study, is significantly more advanced and comprehensive than the food plan at issue in the WWI Study. In addition, WWI has updated and improved its activity plan (which now permits consumers to swap *POINTS* values between activity and food), the meeting environment of its Classes, the

tools and resources available to its clients (such as eTools), and its program service and delivery, including the new iPhone App.  Second, the WWI Study analyzes only one manner in which to follow the Weight Watchers program — through Weight Watchers Classes — and does not study any other manner, such as Online.  And the WWI Study tested the effectiveness of Weight Watchers Classes without the benefit of the many companion products and resources available today, including Weight Watchers eTools.  By contrast, the Jenny Craig Study examined all the ways in which consumers can follow the Jenny Craig weight-loss program, including with the support of Jenny Craig's version of eTools available for free on its website.

48.    The studies relied on by Jenny Craig also do not provide a reliable basis for Jenny Craig's claims of superiority.  In order to evaluate the comparative efficacy of two products, a head-to-head randomized controlled trial directly comparing the two products must be performed.  By contrast, Jenny Craig's reliance on solely the WWI Study and the Jenny Craig Study is an attempt at a cross-trial comparison — a methodology roundly rejected by the biomedical research community to support comparative efficacy claims.

49.    Jenny Craig's cross-trial comparison is unreliable for many other reasons.  Despite Jenny Craig's claim that the two studies had the "same protocol design," material differences in the protocol design between the two studies make any comparison — let alone a reliable one — between them impossible.  For instance, the studies tested different participant populations, at different locations, during different time periods, any of which differences in protocol design could have contributed to different results and therefore preclude any reliable cross-trial comparison.

50.    Furthermore, statements and visual depictions in Jenny Craig's advertising also falsely tell consumers that (a) a head-to-head study (or studies) of the Jenny Craig and

Weight Watchers offerings was conducted when no such study took place; (b) such study compared the current Jenny Craig offerings and the current Weight Watchers offerings when the Weight Watchers offering tested is a decade old; (c) Jenny Craig's superiority claim is with respect to all of WWI's weight-loss offerings when only a segment — Weight Watchers Classes — was tested; and (d) Jenny Craig's cuisine and personal consultants caused its superior results when no such comparison between the two weight-loss programs was conducted and no such finding was even remotely made. These false statements include Bertinelli's statements in the television commercial that "We're talking about a major clinical trial here, run by some serious lab geeks" and "Jenny's delicious cuisine and the support of your personal consultant make all the difference," and the visual images of the bar graph and side-by-side beakers comparing the purported weight loss success of people following the Weight Watchers program with that of Jenny Craig clients, each of which were presented as a graphical representation of test "results."

***WWI's Injury***

51.     Jenny Craig's false and deceptive advertising campaign is currently deceiving existing and potential consumers of weight-loss services and products. Upon information and belief, this campaign has influenced and will continue to influence consumers in an intensely competitive marketplace to purchase Jenny Craig's weight-loss products and services, instead of WWI's weight-loss products and services.

52.     Indeed, Jenny Craig's attack on WWI is timed to coincide with what is known in the weight-loss industry as the winter diet season, the roughly two-and-a-half month period from around New Year's Day through mid-March. In 2009, almost a third of new enrollments in Weight Watchers Classes and more than a quarter of Weight Watchers Online sign-ups occurred in January and February. By making a false direct comparison of Jenny Craig's weight-loss program to the Weight Watchers weight-loss program at this crucial time,

Jenny Craig is specifically targeting potential and current Weight Watchers customers with its campaign.

53.    Moreover, WWI has built a top-notch reputation as the unrivaled leader of the commercial weight-loss industry based on its excellent services, products, and integrity. This well-deserved reputation and strong consumer loyalty are crucial and intangible components of WWI's unmatched success in its industry. If Jenny Craig is allowed to continue to disparage WWI, the enormous reputational damage — including loss of goodwill — that will result from the false impression that will be planted in the mind of the consumer public is not readily ascertainable.

54.    By making these false and deceptive claims during the crucial winter diet season, Jenny Craig now stands to unfairly reap disproportionate gain while inflicting maximal damage on WWI and damaging WWI's brand in the public mind. As such, time is of the essence, and Jenny Craig must be immediately enjoined from broadcasting its false and deceptive advertising campaign.

55.    Jenny Craig's false television commercial, print advertisements, website, and banner advertisements are damaging and, unless enjoined, will continue to damage WWI's ability to compete fairly for market share and customer loyalty on the basis of an exchange of truthful and relevant consumer information.

56.    WWI has suffered and will continue to suffer irreparable harm, including tarnishing of its brand and loss of goodwill, and is without an adequate remedy at law for Jenny Craig's knowingly wrongful conduct.

### FIRST CLAIM
### (False Advertising Under the Lanham Act)

57.    WWI repeats and realleges paragraphs 1 through 56 above.

58.     Jenny Craig, on or in connection with goods or services used in commerce, made false descriptions of fact or false representations of fact as to the nature, characteristics, and qualities of its and WWI's goods, services, or commercial activities.

59.     Jenny Craig's false descriptions of fact or false representations of fact were made in commercial advertising or promotion and in a manner material to the public's decision to purchase such products.

60.     The foregoing acts of Jenny Craig constitute false descriptions or representations of fact in commercial advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     As a result of Jenny Craig's willful conduct, WWI has suffered irreparable harm, for which it has no adequate remedy at law, and will continue to suffer irreparable injury unless and until Jenny Craig's dissemination of the advertising campaign is enjoined by this Court, pursuant to 15 U.S.C. § 1116.

62.     In addition, Jenny Craig will unjustly reap profits from sales based on consumer reliance on the advertising campaign's false and deceptive comparison of the quality, performance, and value of the parties' goods and services.

63.     Pursuant to 15 U.S.C. § 1117, WWI is entitled to actual damages in an amount to be determined at trial, to have such damages trebled, to Jenny Craig's profits, to the costs of this action, and to attorney's fees.

### SECOND CLAIM
**(Deceptive Trade Practices and False Advertising Under the
New York General Business Law)**

64.     WWI repeats and realleges the allegations of paragraphs 1 through 63 above.

65.    Jenny Craig's willful and knowing false advertising and deceptive trade practices were directed toward consumers with the aim of influencing consumers to make purchasing and product decisions based on the false advertising and deceptive trade practices.

66.    By comparing its product favorably to WWI's product in a willfully and knowingly false and deceptive manner, Jenny Craig made false claims that were material to the consuming public's purchasing and product decisions.

67.    Jenny Craig's willful and knowing broadcast and dissemination of the false advertising has caused and will cause harm to WWI and to the consuming public by deceiving them as to the performance and effectiveness of Jenny Craig's and WWI's weight-loss programs.

68.    The foregoing acts of defendants constitute deceptive trade practices and false advertising in violation of §§ 349 and 350 of the New York General Business Law.

69.    WWI has suffered and will continue to suffer injury as a result of Jenny Craig's false advertising and deceptive trade practices in the form of lost customers and lost sales, damage to its reputation and brand, and erosion of its goodwill.

### THIRD CLAIM
### (Common Law Unfair Competition)

70.    WWI repeats and realleges the allegations of paragraphs 1 through 69 above.

71.    Jenny Craig has engaged in unfair competition by making false and deceptive statements about WWI's and Jenny Craig's weight-loss programs, thereby damaging WWI's ability to compete fairly for market share and customer loyalty on the basis of an exchange of truthful and relevant consumer information.

72.    Jenny Craig acted willfully and in bad faith, in making claims about WWI's weight-loss programs that it knew to be materially false and deceptive.

73.    The foregoing acts of Jenny Craig constitute false advertising and unfair competition against WWI in violation of the common law of the State of New York.

## **PRAYER FOR RELIEF**

WHEREFORE, WWI demands judgment against Jenny Craig for the following relief:

1.    A judgment declaring that defendant Jenny Craig has:

(a)    violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(b)    engaged in deceptive trade practices and false advertising in violation of §§ 349 and 350 of the New York General Business Law; and

(c)    engaged in unfair competition in violation of the common law of the State of New York;

2.    Preliminary and permanent injunctions enjoining Jenny Craig, its agents, servants, officers, employees, and all those acting under its control or on its behalf from:

(a)    broadcasting, publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, cable television, print, the Internet or the World Wide Web, the commercials or claims contained in Exhibits A-H;

(b)    broadcasting, publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, cable television, print, the Internet or the World Wide Web, any commercial, advertisement, or other display that claims, directly or by necessary implication, or that makes any implied claim, that:

(i) Jenny Craig or Jenny Craig's weight-loss program is in any way superior to WWI, the Weight Watchers weight-loss program, or generally to any leading weight-loss company or program;

(ii) Jenny Craig clients "lost over twice as much weight" or "lost over twice as much weight as those on the largest weight loss program";

(iii) Scientific evidence or clinical trials or studies have shown that Jenny Craig clients "lost over twice as much weight" or "lost over twice as much weight as those on the largest weight loss program";

(iv) WWI or the Weight Watchers weight-loss program is inferior in any way to Jenny Craig or the Jenny Craig weight-loss program; or

(v) People following the Weight Watchers weight-loss program lost less weight than people following the Jenny Craig weight-loss program;

(c)    broadcasting, publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, cable television, print, the Internet or the World Wide Web, any commercial, advertisement, or other display that compares the WWI Study and Jenny Craig Study or any similar studies, trials, or reports in any context;

3.    A temporary restraining order enjoining Jenny Craig, its agents, servants, officers, employees, and all those acting under its control or on its behalf from broadcasting, publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, cable television, print, the Internet or the World Wide Web, the commercials or claims, or any substantially similar claim, contained in Exhibits A-H;

4.    A mandatory injunction directing Jenny Craig, its agents, servants, officers, employees and all those acting under its control or on its behalf, to issue corrective

advertising to dispel the impact and effect of the false and deceptive claims previously disseminated through Jenny Craig's television commercials, web site, advertisements, and other promotional materials;

5.     An Order directing Jenny Craig to account to WWI for all gains, profits, savings, and advantages obtained by it as a result of its false advertising and unfair competition, and awarding to WWI restitution in the amount of all such gains, profits, savings, and advantages;

6.     An Order awarding to WWI actual damages resulting from Jenny Craig's unlawful conduct, in an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 1117;

7.     An Order awarding to WWI Jenny Craig's profits attributable to its unlawful conduct, in an amount to be determined at trial and increased in the Court's discretion pursuant to 15 U.S.C. § 1117;

8.     A declaration that this is an "exceptional case" due to the willful nature of Jenny Craig's false advertising, and awarding attorney's fees, costs, and expenses to WWI pursuant to 15 U.S.C. § 1117;

9.     An Order requiring Jenny Craig to pay WWI's costs, expenses, and reasonable attorneys' fees pursuant to §§ 349 and 350 of the New York General Business Law;

10.    An Order awarding WWI punitive damages in an amount sufficient to deter other and future similar conduct by Jenny Craig and others, in view of Jenny Craig's wanton and deliberate unlawful acts; and

11.    An Order granting WWI such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff WWI hereby demands a trial by jury of all issues so triable.

Dated: January 18, 2010
      New York, New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _Martin Flumenbaum_

    Martin Flumenbaum (mflumenbaum@paulweiss.com)
    Lynn B. Bayard (lbayard@paulweiss.com)
    Jay Cohen (jaycohen@paulweiss.com)
    Douglas M. Pravda (dpravda@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Plaintiff Weight Watchers International, Inc.